Helen L. De ANGELAS, and Nicholas C. Di Lullo, on behalf of themselves and all others similarly situated

v.

Eric PLAUT, Commissioner of Mental Health of the State of Connecticut.

Civ. No. N 77–147.

United States District Court,
D. Connecticut.

Sept. 26, 1980.

Dennis E. Curtis, Yale Legal Services, New Haven, Conn., for plaintiffs.

William J. McCullough, Asst. Atty. Gen., Dept. of Mental Health, Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

ELLEN B. BURNS, District Judge.

Plaintiffs brought this class action[1] pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 seeking a declaratory judgment that Section 54–40 of the Connecticut General Statutes (hereinafter § 54–40)[2] violates the Due Process and

---

[1.] Plaintiffs' motion for class certification was granted by Judge Newman on June 15, 1978.

[2.] (a) The officer in charge of any person committed for trial to a community correctional center, on mittimus, bench warrant or appeal, or anyone in behalf of the accused person, shall, if it appears to the officer or to anyone acting in behalf of the accused, at the time of the commitment or before or during the trial, that the accused is so insane or so mentally defective that he is unable to understand the proceedings against him, or to assist in his own defense, immediately present such fact to the judge having jurisdiction of the offense with which the accused is charged, and the judge shall, on such presentation, or may, on his own motion, if he is of the opinion that the mental condition of the accused is probably so defective that he is unable to understand the proceedings against him or to assist in his own defense, hold a hearing to determine whether the accused is able to understand the proceedings against him and to assist in his own defense, notice of the hearing having been given to the state's attorney or assistant state's attorney of the court having jurisdiction of the offense and to counsel for the accused.

(b) The judge may appoint one or more physicians specializing in psychiatry, who shall examine the accused as to his ability to understand the proceedings against him and to assist in his own defense. The physician or physicians shall make written report of the examination to the court, duly verified, and testify at the hearing, and his or their report shall be then placed in evidence, so far as it may be relevant and material. In lieu of appointment of the physician or physicians, the judge may order the commissioner of mental health to effect an examination of the accused as to his ability to understand the proceedings against him and to assist in his own defense, either by a clinical team consisting of a psychiatrist, a clinical psychologist and a psychiatric social worker or by one or more psychiatrists. The clinical team or psychiatrist examining the accused shall make written report of the examination to the court, duly verified, and testify at the hearing, and their report shall then be placed in evidence so far as it may be relevant and material. The examination by the psychiatrist appointed by the court, or clinical team or psychiatrist selected by the commissioner shall be completed within fifteen days from the date the examination was ordered, and his or their written report shall be filed with the court at the completion of the examination. The judge may direct that a physician specializing in psy-

Equal Protection Clauses of the Fourteenth Amendment and have moved for summary judgment based on a stipulation and answers to interrogatories.

chiatry retained by the defendant be permitted to witness the examination.

(c) Until the examination is completed and a hearing held, the accused person, if not released on a promise to appear, conditions of release, cash bail or bond, shall remain in the custody of the commissioner of correction. If the commissioner of correction or the clinical team or psychiatrist conducting the examination determines that the accused person is in need of special medical care during the fifteen-day period, they or he shall notify the court which may, after hearing, commit the accused for confinement and treatment to the Whiting Forensic Institute or to a facility for mental illness operated by the department of mental health and designated by the commissioner of mental health or to an institution for the mentally retarded in this state, provided there is compliance with the provisions of subsection (k) and subdivision (*I*) of subsection 1 of this section.

(d) Upon receipt of the written report as to the accused person's ability to understand the proceedings against him and to assist in his own defense, the clerk of the court shall cause copies to be delivered immediately to the state's attorney and to counsel for the accused, and the judge shall hold a hearing within ten days of such receipt. Any evidence regarding the accused's ability to understand the proceedings against him and to assist in his own defense may be introduced at the hearing by either party. An accused and his counsel may waive the court hearing on competency only if the report of the psychiatrist or clinical team concludes without qualification that the accused is competent to stand trial.

(e) If the court, after a hearing, decides that the accused is able to understand the proceedings against him and to assist in his own defense, it shall proceed with the trial, but, if it decides that the accused is unable to understand the proceedings against him or to assist in his own defense, it shall commit him to the commissioner of mental health or to the commissioner of mental retardation for confinement and treatment until he is able to understand the proceedings against him and to assist in his own defense, or until the termination of the maximum period of commitment. Such maximum period of commitment shall be set by the court and may not exceed the shorter of eighteen months or the maximum period to which the accused could have been sentenced had he been found guilty of the crime charged.

(f) If, after commitment by the court, the commissioner of mental health or the commissioner of mental retardation is of the opinion that the accused is able to understand the proceedings against him and to assist in his own defense, he shall report his opinion to the court which committed the accused. Upon receipt of the report, copies shall be delivered by the clerk as provided in subsection (d), and the court shall fix a time within ten days for a hearing to determine whether the accused is able to understand the proceedings and to assist in his own defense. The hearing shall be conducted in the same manner as the hearing in the first instance. If, after the hearing, the court decides that the accused is able to understand the proceedings and to assist in his own defense, it shall proceed with the trial; but, if it decides that the accused is still not able to understand the proceedings or to assist in his own defense, it shall order him reconfined under the same commitment.

(g) During the period of confinement, the commissioner of mental health or the commissioner of mental retardation shall, at least every six months, issue a written report to the court stating his opinion as to whether or not the accused is able to understand the proceedings against him and to assist in his own defense, and, if possible, his opinion as to whether or not he will become so able within the balance of the maximum period of commitment set by the court. This report shall be filed with the clerk of the court who shall cause copies to be delivered as in subsection (d). If it is indicated in the report that the accused is able to understand the proceedings and to assist in his own defense or that the accused will not become able, within the balance of the maximum period of commitment, to understand the proceedings against him and to assist in his own defense, or upon receipt of a request by the accused or his counsel, the court shall within ten days of receipt of such report or request, as the case may be, hold a hearing to determine whether or not the accused is able to understand the proceedings against him and to assist in his own defense and whether or not the accused will become able, within the balance of the maximum period of commitment, to understand the proceedings against him and to assist in his own defense. If the court decides that the accused is able to understand the proceedings against him and to assist in his own defense, it shall proceed with the trial, but if it decides that the accused is unable to understand such proceedings or that he is unable to assist in his own defense, it shall order him reconfined under the same commitment.

(h) If at any time during the maximum period of commitment the court decides that the accused will not become able to understand the proceedings against him and to assist in his own defense within the balance of the maximum period of commitment set by the court, and in any event upon termination of the maximum period of confinement set by the court, the commissioner of mental health or commissioner of mental retardation shall make appli-

## STIPULATION

Plaintiffs are United States citizens and Connecticut residents, each of whom, pursuant to proceedings under § 54–40, has been found incompetent to stand trial on criminal charges and ordered confined in a Connecticut state mental hospital maintained and operated under the authority and supervision of the defendant, Commissioner of Mental Health of the State of Connecticut. The defendant, as Commissioner, has the legal obligation to implement § 54–40 by confining persons such as plaintiffs who are committed to his custody. At the time of commencement of this action plaintiffs were so confined and at that time, and as of May, 1979, at least thirty–five persons were so confined. On September 1, 1978, approximately fifty–nine persons were so confined and during the year preceding September 1, 1978, approximately 159 persons were so confined. Commitment terms ranged from one–half month to eighteen months and length of actual confinement ranged from six days to eighteen months.

§ 54–40 requires the confinement in mental institutions or mental retardation facilities of persons who are found to be unable to understand the proceedings against them or to assist in their own defense. Such persons may be confined to locked hospital wards, may not leave the institution and may be required to submit to compulsory medication and other forms of psychiatric treatment. § 54–40 does not require the court to find that confinement in mental institutions of persons such as plaintiffs is necessary to restore them to competence or

to determine that the proposed course of treatment is suitable for them or that they are amenable to such treatment, and no such findings were made with respect to any of the plaintiffs. § 54–40 requires the institutional confinement of persons such as the plaintiffs even if they are not dangerous to themselves or others or gravely disabled and even if less restrictive alternatives are available to restore them to competence. No finding was made by the court, in ordering the confinement of the plaintiffs, that any of them was dangerous to himself or others or gravely disabled or as to whether a mode of treatment less restrictive of personal liberty than full–time confinement at an institution would be effective in assisting him to become competent to stand trial.

§ 54–40 does not require the court to find probable cause that persons such as plaintiffs are guilty of the offenses with which they are charged or to determine that they would be likely to receive sentences of incarceration if convicted or what the probable term of incarceration would be, and no such findings were made with respect to any of the plaintiffs.

§ 54–40 neither permits nor prohibits persons such as plaintiffs to present affirmative defenses such as alibi or entrapment, or to expose defects in the prosecution's case such as illegally seized evidence, which would establish their innocence or reduce or eliminate the likelihood of conviction and plaintiffs were not afforded a hearing to determine whether such defenses or defects

cation to the probate court for the district in which the accused is confined for commitment under the provisions of section 17–178.

(i) None of the provisions herein shall prevent prosecution of the accused at the time of his official discharge in accordance with section 17–178 or section 17–198, unless such prosecution is barred by section 54–193, as amended by section 53 of this act.

(j) The provisions of section 17–198 shall apply to any accused confined under this section.

(k) Nothing in this section shall be construed to allow the commissioner of mental health to commit any violent or desperate accused person to a mental institution which does not have the trained staff, facilities and security to accommodate such a person. If commitment to

such a facility becomes necessary, a state policeman shall be provided to guard the accused person after commitment to such an institution.

(*l*)(1) The cost of examination effected by the commissioner of mental health and of testimony of physicians conducting such examinations shall be paid from the appropriation of the department of mental health. The cost of examinations and testimony by physicians appointed by the court shall be paid from the appropriation of the judicial department.

(2) An accused's hospital expense during confinement pursuant to subsection (e) shall be computed and paid for in the same manner as is provided for persons committed by a probate court under the provisions of chapter 308.

existed in their cases. (The stipulation does not indicate whether any of the plaintiffs ever requested such a hearing or whether such a request, if made, was denied.)

§ 54–40 does not require that the defendant release from confinement persons committed under that statute who defendant determines will not become competent to stand trial within the maximum period of confinement authorized by statute and who are determined by a court of competent jurisdiction not to be civilly committable, although the Connecticut Attorney General has determined that such persons shall be released.

Connecticut laws do not require that persons confined pursuant to § 54–40 be given credit for that confinement against any sentence they may subsequently receive if they are convicted of the offense for which they were found incompetent to stand trial.

Persons not accused of criminal offenses may not be involuntarily confined in institutions for mental illness under Connecticut civil commitment laws unless proved by clear and convincing evidence to be mentally ill and dangerous to themselves or others or gravely disabled, and the court must consider whether a less restrictive alternative is available for the care and treatment of such persons.[3] Any such person who is so confined must be released when he is no longer mentally ill and/or dangerous to himself or others or gravely disabled.

Plaintiffs attack the constitutionality of § 54–40 on the claim that they and members of their class have been deprived of liberty without due process of law in that § 54–40 permits them to be confined for more than the reasonable period of time necessary to determine whether there is substantial probability that they will attain competence in the foreseeable future and that § 54–40 requires that they be confined without a finding that there is probable cause that they will be convicted and incarcerated for the offenses of which they are accused and without a determination of whether there are alternatives less restrictive than confinement to a mental institution to restore them to competence. The plaintiffs also claim that they and members of their class have been denied the equal protection of the law in that they have been subjected to more lenient commitment standards and more stringent release standards than those generally applicable to other persons confined for treatment of mental illness.

## DUE PROCESS CLAIMS

Analysis of the plaintiffs' due process claims requires consideration of three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1975).

■ The private interest here affected is basic and fundamental, "a massive curtailment of liberty." *Humphrey v. Cady*, 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972). Involuntary commitment to a hospital for the mentally ill is clearly such a deprivation of liberty as can only be accomplished by a state in strict observation of requirements of due process. As Chief Justice Burger observed in his concurring opinion in *O'Connor v. Donaldson*, 422 U.S. 563, 580, 95 S.Ct. 2486, 2496, 45 L.Ed.2d 396 (1974), an action concerning civil commitment process: "Commitment must be justified on the basis of a legitimate state interest, and the reasons for committing a particular individual must be established in an appropriate proceeding. Equally important, confinement must cease when the reasons no longer exist."

■ In the civil commitment context, justification is predicated on the state's interest in the protection of the public under

3. C.G.S. § 17–178.

the police power and/or the protection of the mentally ill person himself under the *parens patriae* doctrine, and requires a finding that the subject of the commitment proceeding is either dangerous to himself or others or unable to live safely in freedom. *O'Connor v. Donaldson, supra*, at 575, 95 S.Ct. at 2493. Justification for the commitment of an incompetent accused is found in the state's interest in the restoration of the accused to competency because of the right of the public and the defendant to the prompt disposition of criminal charges pending against him, *Strunk v. United States*, 412 U.S. 434, 439 fn. 2, 93 S.Ct. 2260, 2263 fn. 2, 37 L.Ed.2d 56 (1973) and for the protection of the accused against being required to answer to charges which he lacks the capacity to understand or to assist his attorney in defending against. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). Commitment of an accused thus focuses on the state's interest in his restoration to capacity and necessarily entails a finding of the probability that he can be so restored. As the court held in *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972), "[a] person charged by a state with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, the state must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal."

The statute under consideration here, § 54–40, has been amended six times by the Connecticut legislature since the *Jackson* decision, in 1974, 1975, 1976, 1977, 1978 and 1980, the 1977 public act, Public Act 77–415, dealing specifically with the maximum period of confinement (§ 54–40(c)) in an attempt to meet the *Jackson* mandate. Sen-

ate Proceedings, 1977, p. 2926; House Proceedings, 1977, p. 3105. As a result, commitment under § 54–40(e) of an accused, who the court finds is unable to understand the proceedings against him or to assist in his own defense, is to the commissioner of mental health or the commissioner of mental retardation for confinement and treatment until he attains that ability or until the termination of the maximum period of commitment set by the court. That period may not exceed the shorter of eighteen months and the maximum period to which the accused could be sentenced if found guilty of the crime with which he is charged. Subsection (f) of § 54–40 further provides for a report back to the court, after the commitment, if the commissioner is of the opinion that the accused is competent with a hearing to be held thereon within ten days of the receipt of any such report, and under subsection (g) the commissioner is required to submit reports to the court at least every six months in which he expresses his opinion as to the competence of the accused and, if possible, as to whether the accused will become competent within the maximum period of commitment. A hearing is held within ten days of the receipt of any such report expressing the opinion that the accused is competent or will not become competent or of any request for a hearing by the accused or his counsel. Under subsection (h), if, at any time during the commitment period, the court finds the accused will not become competent during the commitment period, and in any event upon termination of the maximum commitment period, the commissioner is directed to institute civil commitment proceedings.

Under the Connecticut statutory scheme the court's initial and only finding supporting its commitment decision, after hearing the medical testimony, is that the accused is unable to understand the proceedings against him or to assist in his own defense. § 54–40(f). No finding is made as to the probability that he will attain that ability in the foreseeable future, an affirmative finding concerning which is critical, under *Jack-*

*son*, to the authority to hold the accused under this type of commitment absent a finding that he is dangerous to himself or others. *Jackson, supra*, at 733, 92 S.Ct. at 1855. *Jackson* also suggests that a finding that commitment could contribute to improvement is mandated. *Jackson, supra*, at 727, 733, 92 S.Ct. at 1852, 1855. This requirement is consistent with the doctrine of least restrictive alternative, i. e., that "[t]he breadth of legislative abridgement must be viewed in light of less drastic means for achieving the same basic purpose." *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1969).

█ In the civil commitment context, the District of Columbia circuit court has observed that "the principle of the least restrictive alternative consistent with the legitimate purposes of a commitment inheres in the very nature of a civil commitment, which entails an extraordinary deprivation of liberty . . ." *Covington v. Harris*, 419 F.2d 617, 623 (D.C.Cir. 1969). See also *Ashe v. Robinson*, 450 F.2d 681, 683 (D.C.Cir. 1971); *Eubanks v. Clarke*, 434 F.Supp. 1022, 1028 (E.D.Pa. 1977). There appears no legitimate reason why the commitment of an incompetent accused should not also be only after a consideration of the least restrictive alternatives consistent with his restoration to capacity.

Under § 54–40 the first report to the court as to whether the accused will become competent during the commitment period can be made as late as six months after commitment which in some misdemeanor cases where the maximum sentence is less than six months will mean no such report need ever be made. At no time is an inquiry into or finding made concerning the necessity of commitment for restoration to capacity as opposed to less restrictive alternative types of treatment although it cannot "be assumed that confinement in a hospital is beneficial 'environmental therapy' for all", *Rouse v. Cameron*, 373 F.2d 451, 456 (D.C.Cir. 1967) and although commitment, in the absence of a finding of dangerousness, must be because of the "State's ability to aid [the accused] in attaining competency through custodial care or compulsory treatment, the ostensible purpose of the commitment." *Jackson, supra*, at 738, 92 S.Ct. at 1858, 32 L.Ed.2d 435.

█ Under § 54–40 an incompetent accused who would probably not be restored to capacity during the commitment period could be held as long as six months before a report on the probability of his recovery need be made and such an accused who could effectively be treated without commitment to a hospital for the mentally ill could, nevertheless, be confined in such an institution for the duration of his incapacity up to the maximum commitment period. These considerations compel a finding that § 54–40 does not comport with the *Jackson* mandate.

█ Plaintiffs also attack the constitutionality of § 54–40 because the statute has no requirement that the court, prior to commitment, find probable cause to believe that the incompetent committed the crime of which he is accused. Citing *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) plaintiffs claim the requirement of such a finding must also be incorporated into § 54–40. § 54–40 must be read in the context of the Connecticut criminal procedural laws and rules. With respect to any such accused arrested pursuant to an indictment or warrant a determination as to probable cause has already been made by a grand jury (C.G.S. § 54–45, as amended by Public Act 80–313, § 3) or by the superior court, or a judge thereof (C.G.S. § 54–2a, as amended by Public Act 80–313, § 2). With respect to any such accused arrested without a warrant who was not released from custody prior to or at the time of arraignment, such a determination has already been made by the judicial authority under the mandate of § 650 of the Connecticut Rules of Criminal Procedure. However, for those defendants arrested without a warrant who are at liberty at the time of commitment under § 54–40, a determination as to probable cause for believing they committed the offenses charged must be made although it may be made by the court without an adversary hearing. *Gerstein*,

*supra,* at 120, 95 S.Ct. at 866. Plaintiffs' further contention that such a finding should also include a determination of the likelihood and length of any possible incarceration on conviction exceeds the requirements of *Gerstein* and this court finds no justification for impressing such a requirement on the § 54–40 procedure.

■ Similarly the court finds that a maximum commitment period of eighteen months or a period equivalent to the maximum authorized sentence for the offense charged, whichever is lesser, is not an unreasonable period during which an incompetent accused may be confined in an effort to restore him to capacity.

Plaintiffs have also questioned whether an incompetent accused may raise issues such as alibi, entrapment and illegal seizure and other pretrial motions. It has been stipulated that § 54–40 neither permits nor requires the presentation of affirmative defenses or pretrial motions and that none of the plaintiffs was afforded a hearing as to whether any defense or defect existed in his case. The record, however, does not reveal whether any request for such relief was ever made or, if made, denied and this court cannot determine, on the basis of the present record, what the posture of a Connecticut court would be if presented with the issue. Accordingly, this court finds that the issue has not been presented in a context in which, on this summary judgment motion, it is ready for determination.

Those additional findings which this court would impress on commitment procedures under § 54–40, i. e., a finding of probability that the accused can be restored to capacity in the foreseeable future, that commitment is the least restrictive alternative to effect such restoration and, in the case of those persons for whom such a finding has not previously been made, that there is probable cause to believe the accused committed the crime, in the view of the court, impose no significant additional fiscal or administrative burdens on the procedure, especially when considered in the context of the liberty interest at stake and the risk of erroneous deprivation of such interest.

## EQUAL PROTECTION CLAIM

Plaintiffs claim they have been denied equal protection of the law in that persons accused of crimes and found incompetent to stand trial are the only persons denied the substantive and procedural safeguards required by the Connecticut civil commitment statute, § 17–178, i. e., a finding that they are not only mentally ill but also dangerous to themselves or others or gravely disabled. Citing *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), (commitment at the end of a prison term) and *Chesney v. Adams,* 377 F.Supp. 887 (D. Conn. 1974) *aff'd* 508 F.2d 836 (2d Cir. 1975) (transfer of state prisoners to mental hospitals), in each of which the court found the persons involved entitled to the same consideration of dangerous propensity or grave disability as civilly committed persons, plaintiffs claim that incompetent accused may not be confined without similar findings.

■ As the court stated in *Baxstrom, supra,* at 111, 86 S.Ct. at 762, 15 L.Ed.2d 620, "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction have some relevance to the purpose for which the classification is made." The court's inquiry on an equal protection claim is whether the disparate treatment bears a rational relation to a permissible state objective. *Chesney, supra,* at 892.

■ In all other cases where persons are committed to facilities for the mentally ill under Connecticut law, the constitutional basis for commitment is the protection of the public or of the committed person himself and, without a finding that commitment is necessary because he is dangerous to himself or others or gravely disabled, the state has no legitimate claim for commitment.

■ However, as discussed above, in the case of one accused of crime, the state has a separate wholly legitimate interest in restoration of the accused to capacity to which the disparate treatment here accord-

ed bears a rational relation. Incompetency and mental illness are not equivalents. To superimpose a requirement of a finding of dangerousness or grave disability on the finding of incapacity to stand trial or assist in one's own defense could well frustrate the state's legitimate interest in the disposition of criminal matters and is unrelated to the purpose of the commitment. The court finds no equal protection violation under the statute.

## CONCLUSION

§ 54–40 in its present form and application violated plaintiffs' right to due process. Accordingly, plaintiffs' request for declaratory relief is granted and judgment will enter declaring § 54–40 unconstitutional insofar as it fails to require findings (1) concerning the probability that the accused can be restored to capacity in the foreseeable future, (2) that commitment of the accused is the least restrictive alternative to effect such restoration and (3) in the case of those persons for whom such a finding had not previously been made, that there is probable cause to believe the accused committed the crime.

SO ORDERED.